**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ORLANDO SALAS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SET FORTH, INC.,

Defendant.

Case No. 1:24-cv-11974

JURY TRIAL DEMANDED

## I. CLASS ACTION COMPLAINT

Plaintiff Orlando Salas ("Plaintiff"), individually and on behalf of all others similarly situated, by and through the undersigned attorneys, bring this class action against Defendant Set Forth, Inc., doing business as Forth ("Forth" or "Defendant") and complains and alleges the following upon personal knowledge, as to his own actions and an investigation by counsel, and upon information and belief as to all other matters.

## II. INTRODUCTION

1. Financial services providers that collect consumers' sensitive information, including their names, phone numbers, addresses, email addresses, dates of birth, financial account numbers, Social Security numbers and/or passport numbers as well as loan applications, credit reports, bank statements, and the private financial information contained therein ("Personally Identifiable Information" or "PII"), have a duty to the consumers to protect their valuable, sensitive information.

2. Defendant is a "dedicated account administrator and processor" for consumer debt relief programs, including debt relief programs offered by Forth's business partner, Centrex, Inc. ("Centrex").[1] During the regular course of conducting its business, Forth collects, stores, and transfers the PII of its customers, their spouses, dependents, and co-applicants, as well as the PII of its business partners' customers, their spouses, dependents, and co-applicants (collectively the "Class Members").

3. As a corporation whose bread and butter requires the gathering of highly sensitive consumer financial information, Defendant understands the life-altering impact a data breach can wreak on the average MoneyGram customer or user.

4. The release, disclosure, sale, and publication of sensitive, personal information can be devastating. Not only is it an intrusion of privacy, but it is a harbinger of identity theft.

5. Despite Defendant's status as a sophisticated financial services provider, Defendant failed to properly protect customers and users by investing in adequate data security, thereby allowing hackers to exfiltrate the highly sensitive PII of at least 1.5 million customers who entrusted their data to Defendant (the "Data Breach").

6. On or about May 21, 2024, Forth identified suspicious activity on its computer system. After engaging computer forensic specialists, Forth learned that unauthorized third parties had accessed PII entrusted to Forth.[2]

7. Despite knowing of the Data Breach since as early as May 21, 2024, Forth did not send a Notice of Data Security Incident ("Notice") to individuals affected by the Data Breach for nearly *six months*, until November 8, 2024.

8. Defendant's failure to promptly notify Plaintiff and Class members that their PII

---

[1] https://www.setforth.com/notice-of-data-security-incident/ (last accessed November 19, 2024).
[2] https://oag.ca.gov/ecrime/databreach/reports/sb24-594625 (last accessed November 19, 2024).

was exfiltrated due to Defendant's security failures virtually ensured that the unauthorized third parties who exploited Defendant's security vulnerabilities could monetize, misuse, and/or disseminate that PII before Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated even beyond the Data Breach itself.

9. In its Notice, Forth failed to provide important details about the Data Breach, including whether the cybercriminal(s) responsible for the breach were identified or the information exfiltrated was held for ransom. Forth also did not disclose whether its investigation detected compromised information on the dark web. Nor did Forth disclose how it discovered the Data Breach, the means and mechanism of the cyberattack, and, importantly, what specific steps Forth took following the Data Breach to secure its systems and prevent future cyberattacks.

10. Because cyberattacks targeting large corporations and financial services providers are ubiquitous, it was foreseeable that Defendant would be the target of a cyberattack, and it should have taken appropriate precautions.

11. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect PII from the foreseeable threat of a cyberattack.

12. Financial services providers like Defendant are entrusted with Plaintiff's and Class Members' PII as a condition for using their services. Defendant has duty to Plaintiff and Class Members to implement and maintain reasonable and adequate security measures to protect Plaintiff's and Class Members' PII against unauthorized access and disclosure. Defendant also has a duty to adequately safeguard this PII under applicable law, as well as pursuant to industry

standards and duties imposed by statutes, including Section 5 of the Federal Trade Commission Act ("FTC Act"). Defendant breached those duties by, among other things, failing to implement and maintain reasonable security procedures and practices.

13. Cybercriminals can use and sell stolen PII to further harm Plaintiff and Class Members in a variety of ways, including: destroying their credit by opening new financial accounts and taking out loans in Class Members' names; using Class Members' names to improperly obtain medical services; using Class Members' PII to target other phishing and hacking intrusions; using Class Members' PII to obtain government benefits; and otherwise assuming Class Members' identities.

14. As a result of the Data Breach, Plaintiff and approximately 1.5 million Class Members have suffered concrete harm and are now exposed to a heightened and imminent risk of fraud and identity theft based on the compromise of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect its PII. These risks will remain for the lifetimes of Plaintiff and the Class.

15. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

16. Plaintiff and the Class Members seek to hold Defendant responsible for the harm caused by the Data Breach. Plaintiff seeks remedies for Defendant's negligence, negligence per se, breaches of fiduciary duty, unjust enrichment, breaches of implied contract, violations of state

consumer protection statutes, and for declaratory and injunctive relief, including actual and statutory damages, restitution, and injunctive and declaratory relief; attorneys' fees, costs, and expenses incurred in bringing this action; and all other remedies the Court deems just and proper.

## III. PARTIES

### A. Plaintiff Orlando Salas

17. Plaintiff Orlando Salas is an individual residing in Riverside, California.

18. Plaintiff entrusted his PII to Forth in connection with his purchase of debt relief services through Centrex.

19. On approximately November 12, 2024, Plaintiff received a Notice from Forth stating his PII had been accessed by unauthorized third parties in the Data Breach.

20. Plaintiff is careful about sharing his PII and takes reasonable steps to protect it. Plaintiff has never knowingly transmitted unencrypted PII over the internet or through other unsecured means.

21. At the time of the Data Breach, Forth retained Plaintiff's PII in its systems, and on information and belief it continues to retain that information.

22. Upon receiving notice of the Data Breach, Plaintiff made reasonable efforts to mitigate its impact, including, but not limited to, monitoring his various financial and banking accounts for fraudulent activity.

23. Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff will need to maintain these heightened measures indefinitely.

24. Plaintiff has also suffered actual injury from having his PII compromised as a result of the Data Breach, including, but not limited to: (a) damage to and diminution in the value of

Plaintiff's confidential PII—a form of property that was entrusted (indirectly) to Forth and was compromised as a result of the Data Breach Forth failed to prevent; (b) a violation of Plaintiff's privacy rights as a result of unauthorized disclosure of his PII; and (c) present, imminent, and impending injury arising from the increased risk of identity theft; and (d) loss of benefit of the bargain.

25. Plaintiff has and is continuing to experience fear, stress, frustration, and anxiety, among other issues, because Forth disclosed his PII to unauthorized parties who may now use that information for improper and unlawful purposes.

26. Plaintiff is exposed and will continue to be exposed for the remainder of his life, to imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from his PII being obtained by unauthorized third parties and/or cybercriminals.

27. Plaintiff is also at a continued risk of harm because, on information and belief, his PII remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack, and is subject to further attack, so long as Defendant fails to undertake the necessary and appropriate data security measures to protect the PII in its possession.

28. Plaintiff has a continuing interest in ensuring that his PII, which remains within Defendant's possession and control, is protected and safeguarded against future data breaches and cybersecurity risks.

**B. Defendant**

29. Defendant is a corporation organized under the laws of Delaware with a principal place of business located at 1900 E Golf Road, Suite 550, Schaumburg, Illinois.[3]

[3] https://www.setforth.com/consumers/contact-us/ (last accessed November 19, 2024).

## IV. JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)–(7) because: (i) the amount in controversy exceeds $5 million, exclusive of interest and costs; (ii) the number of Class Members exceeds 100; and (iii) minimal diversity exists because many Class Members, including Plaintiff, have different citizenship from Defendant.

31. This Court has personal jurisdiction over Forth because Forth resides in and conducts substantial business in this District through its principal place of business; engaged in the conduct at issue from and within this District; and otherwise has substantial contacts with this District.

32. Venue is proper under 28 U.S.C. § 1391(a) and (b) because Forth's principal place of business is in this District and a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District.

## V. FACTUAL BACKGROUND

### A. Defendant Collects Highly Sensitive Financial Information from Customers.

33. Founded in 2009, Forth describes itself as a company "dedicated to leveraging our exemplary team, track record, technology and operational platform to help consumers exit indebtedness."[4] Specifically, Forth provides account administration services to consumers enrolled in debt repayment programs.[5]

34. As a regular and necessary part of its business, Forth collects and maintains sensitive PII from its customers. That information includes, but is not limited to, names, addresses,

---

[4] https://www.setforth.com/consumers/about-forth/our-approach/ (last accessed November 19, 2024).

[5] https://www.setforth.com/consumers/faqs/ (last accessed November 19, 2024).

dates of birth, social security numbers, and confidential financial information. As a result, Defendant hosts a large repository of sensitive personal information maintained for its customers and received from customers and users, including Plaintiff and the Class.

35. Forth is aware of the sensitive nature of the PII it collects, and it acknowledges the importance of data privacy. Indeed, in its Privacy Policy on its website, Forth claims that it is "dedicated to protecting your privacy."[6]

36. The Privacy Policy goes on to state: "[W]e use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We also attempt to limit personal information access to only employees, agents and representatives who need to know."[7]

37. Upon information and belief, Defendant promises its customers, including Plaintiff and Class Members, to keep PII private; comply with FTC guidelines; inform consumers of its legal duties and comply with all federal and state laws protecting consumer PII; only use and release PII for reasons that relate to the products and services Plaintiff and Class Members obtain from Defendant; and provide adequate notice to individuals if their PII is disclosed without authorization. Based on Defendant's promises, Plaintiff and Class Members reasonably expected that Forth would do these things.

38. By obtaining, collecting, using, and benefitting from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties that required it to, at a minimum, implement adequate safeguards to prevent unauthorized use or disclosure of PII and to report any unauthorized use or disclosure of PII.

---

[6] https://www.setforth.com/privacy-policy/ (last accessed November 19, 2024).
[7] https://www.setforth.com/privacy-policy/(last accessed November 19, 2024).

39. Contrary to Defendant's representations and assurances, it failed to implement adequate data security measures, as evidenced by the Data Breach.

**B. Defendant's Failure to Adequately Protect Customer Data Resulted in the Data Breach**

40. On May 21, 2024, Forth and Centrex discovered suspicious activity from an unauthorized user on their systems.[8] Defendant claims that it "implemented their incident response protocols, began an investigation, and engaged independent computer forensic specialists to help."[9]

41. Nearly six weeks later on July 1, 2024 Defendant determined that the unauthorized user gained access to documents on their systems, including names, Social Security numbers, dates of birth, and addresses.

42. Despite coming to a determination about the scope of the Data Breach on July 1, 2024, Defendant waited until November 8, 2024 to begin notifying Class Members and to file a data breach notification with the California Attorney General.

43. Defendant's Notice failed to disclose the root cause of the Data Breach or the vulnerabilities exploited by the cybercriminals. To date, these omitted details have not been explained or revealed to Plaintiff and Class Members, who retain a vested interest in ensuring that their PII is not repeatedly exposed to cybercriminals by Defendant.

44. Forth's Notice also omits what computer systems were impacted, the means and mechanisms of the cyberattack, how it determined that the PII had been accessed, and (of particular importance to Plaintiff and Class Members) the actual steps Forth took following the Data Breach to secure its systems and train its employees to prevent further cyberattacks.

---

[8] https://www.setforth.com/notice-of-data-security-incident/ (last accessed November 19, 2024).
[9] *Id.*

45. Based on Forth's acknowledgments, unauthorized criminal actors did in fact access Forth's network and exfiltrated Plaintiff's and Class Members' PII in an attack designed to acquire that sensitive, confidential, and valuable information.

46. The PII contained in the files accessed by cybercriminals appears not to have been encrypted because if properly encrypted, the attackers would have acquired unintelligible data and would not have accessed Plaintiff's and Class Members' PII.

47. As a financial services provider that collects and maintains significant volumes of financial data and PII, the targeted attack was a foreseeable risk of which Forth was aware and knew it had a duty to guard against.

48. The Data Breach reportedly impacted the PII of approximately 1.5 million individuals.

**C. Defendant's Conduct Violated the FTC Act Requirements for Safeguarding Customers' PII.**

49. The Federal Trade Commission ("FTC") regularly promulgates guidelines for businesses, which highlight the necessity of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

50. The FTC rules, regulations, and guidelines obligate businesses to protect PII from unauthorized access or disclosure by unauthorized persons.

51. Defendant was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the

FTC Act.[10]

52. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[11]

53. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

54. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

55. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.[12] Orders resulting

---

[10] *See, e.g.*, *FTC v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

[11] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (October 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Nov. 19, 2024).

[12] *See*, *e.g. In the Matter of LabMD, Inc.*, 2016 FTC LEXIS 128, 107 (F.T.C. July 28, 2016)

from these actions further clarify the measures businesses must take to meet their data security obligations.

56. Defendant was at all times fully aware of its obligation to protect customers' PII. Defendant was also aware of the significant repercussions that would result from its failure to do so. Forth's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

### D. Forth Failed to Comply with Industry Standards for Safeguarding Customers' PII.

57. In light of the evident threat of cyberattacks seeking consumers' PII, several best practices have been identified by regulatory agencies and experts that, at a minimum, should be implemented by companies like Defendant to secure Plaintiff's and Class Members' PII.

58. Forth is aware of the importance of safeguarding Plaintiff's and Class Members' PII, and that by virtue of its business—as a company that handles sensitive financial and banking information—it placed Plaintiff's and Class Members' PII at risk of being targeted by cybercriminals.

59. Because Forth failed to implement, maintain, and comply with necessary cybersecurity requirements, it was unable to protect Plaintiff's and Class Members' information and confidentiality, and protect against obvious and readily foreseeable threats to information security and confidentiality.

60. Several best practices have been identified that, at a minimum, should be implemented by corporate entities like Defendant, including, but not limited to: educating all

("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act."), *vacated on other grounds, LabMD, Inc. v. Fed. Trade Comm'n*, 894 F.3d 1221 (11th Cir. 2018).

employees; strong passwords; multi-layer security, such as firewalls and anti-virus and anti-malware software; encryption (e.g., making data unreadable without a key); multi-factor authentication; backup data; and limiting the number of employees with access to sensitive data.

61. Other commonly accepted data security standards among businesses that store personal information, such as the PII involved here, include, but are not limited to:

a. Maintaining a secure firewall configuration;

b. Monitoring for suspicious or irregular traffic to servers;

c. Monitoring for suspicious credentials used to access servers;

d. Monitoring for suspicious or irregular activity by known users;

e. Monitoring for suspicious or unknown users;

f. Monitoring for suspicious or irregular server requests;

g. Monitoring for server requests for personal and financial information;

h. Monitoring for server requests from VPNs; and

i. Monitoring for server requests from Tor exit nodes.

62. Defendant failed to meet the minimum standards of, *e.g.*, the NIST Cybersecurity Framework, and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established industry standards in reasonable cybersecurity readiness.

63. These foregoing frameworks are existing and applicable industry standards in the corporate sector and Defendant failed to comply with these accepted standards, thereby opening the door to cybercriminals and causing the Data Breach.

64. Despite Defendant's obligations, Defendant failed to appropriately monitor and maintain its data security systems in a meaningful way so as to prevent the Data Breach.

65. Had Defendant properly maintained its systems and adequately protected them, it could have prevented the Data Breach.

**E. Forth Owed a Duty to Safeguard PII, and It Breached That Duty.**

66. Forth was aware of the importance of security in maintaining personal information (particularly sensitive personal information like the PII involved here), and the value consumers place on keeping their PII secure.

67. In addition to its obligations under federal and state laws, regulations, and industry guidelines, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII of Plaintiff and Class Members.

68. Defendant owed a duty to Plaintiff and Class Members, who entrusted Defendant with extremely sensitive PII to design, maintain, and test the information technology systems that housed Plaintiff's and Class Members' PII, to ensure that the PII in Defendant's possession were adequately secured and protected.

69. Defendant owed a duty to Plaintiff and Class Members to adequately train its employees and others with access to Plaintiff's and Class Members' PII on the procedures and practices necessary to safeguard such sensitive information. This duty also required supervision, training, and compliance on Forth's part to ensure that it complied with creating, implementing, and maintaining reasonable data security practices and procedures sufficient to protect Plaintiff's and Class Members' PII.

70. Defendant owed a duty to Plaintiff and Class Members to implement processes that would enable Defendant to timely detect a breach of its information technology systems, and a duty to act upon any data security warnings or red flags detected by such systems in a timely fashion.

71. Defendant owed a duty to Plaintiff and Class Members to disclose when and if its information technology systems and data security practices were not adequate to protect and safeguard Plaintiff's and Class Members' PII.

72. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of inadequate data security practices.

73. Defendant violated these duties. Forth became aware of the Data Breach on or about May 21, 2024; however, Plaintiff, Class Members, and the public did not learn of the Data Breach until more than five months later. Defendant failed to publicly describe the full extent of the Data Breach and notify the affected parties. This demonstrates that Forth did not properly implement measures designed to timely detect a data breach of their information technology systems, as required to adequately safeguard Plaintiff's and Class Members' PII.

74. Forth breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Forth's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

- Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;
- Failing to adequately protect customers' PII;
- Failing to properly monitor its own data security systems for existing intrusions;

- Failing to ensure that its vendors with access to its computer systems and data employed reasonable security procedures;
- Failing to detect unauthorized ingress into its systems;
- Failing to implement and monitor reasonable network segmentation to detect unauthorized travel within its systems, including to and from areas containing the most sensitive data;
- Failing to detect unauthorized exfiltration of the most sensitive data on its systems;
- Failing to train its employees in the proper handling of emails containing PII and maintain adequate email security practices;
- Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;
- Failing to adhere to industry standards for cybersecurity as discussed above; and
- Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' private PII.

75. Forth negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII by allowing cybercriminals to access its computer network, which contained unsecured and unencrypted PII.

76. Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential PII.

77. However, due to Forth's failures, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and Class Members also lost the benefit of the bargain they made with Forth.

**F. The Data Breach Was a Foreseeable Risk Because Criminals Frequently Target PII.**

78. Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting financial services companies that collect and store PII, like Defendant, preceding the date of the breach.

79. Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors and lead to considerable costs to consumers. According to Statista, during the first quarter of 2023 alone, more than six million data records were exposed worldwide through data breaches. Indeed, cybercrime is slated to cost the world $10.5 trillion annually by 2025.

80. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[13]

81. The Office for Civil Rights ("OCR") also urges the use of encryption of data containing sensitive personal information. For example, in 2014, the OCR fined two companies approximately two million dollars for failing to encrypt laptops containing sensitive personal

---

[13] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last accessed Nov. 20, 2024).

information. In announcing the fines, Susan McAndrew, OCR's Deputy Director of Health Information Privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[14]

82. Moreover, in light of recent high profile data breaches at other industry leading companies such as National Public Data (3 billion records, announced 2024) and AT&T, Inc. (75 million records, March 2024), Defendant knew or should have known that the PII that they collected and maintained would be targeted by cybercriminals.

83. Data breaches are preventable. As Lucy Thompson wrote in the *Data Breach and Encryption Handbook*, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions." She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…"[15] and "[m]ost of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … [a]ppropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."

84. Given the wealth of information from law enforcement concerning the increasing prevalence of cyberattacks, Defendant knew and should have known about its data security vulnerabilities and implemented enhanced and adequate protection to protect and secure Plaintiff's

---

[14] HHS: Stolen Laptops Lead to Important HIPAA Settlements, U.S. Department of Health and Human Services (Apr. 22, 2014), https://www.hcinnovationgroup.com/policy-value-based-care/article/13006731/hhs-stolen-laptops-lead-to-important-hipaa-settlements (last accessed Nov. 20, 2024).

[15] Lucy L. Thompson, Data Breach and Encryption Handbook (Lucy Thompson, ed., 2011) https://archive.org/details/isbn_9781604429893/page/28/mode/2up (last accessed Nov. 20, 2024).

and Class Members' Private Information. Even knowing the risk, Defendant failed to do so.

85. Defendant knew that the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to both the owners of the PII and those who would use it for wrongful purposes.

86. Defendant knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its systems were breached. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

87. Despite the prevalence of public announcements of data breaches, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

88. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

89. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's servers, amounting to millions of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

90. As a highly sophisticated financial services provider that regularly handles financial data and PII, Defendant failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and other Class Members' PII to protect against anticipated threats of intrusion of such information.

91. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in industries holding significant amounts of PII preceding the date of the breach.

**G. PII Is Inherently Valuable Because It Can Be Misused for Financial Gain and Fraud.**

92. PII is a valuable property right.[16] The value of PII as a commodity is measurable.[17] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[18] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[19] Personal data is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

---

[16] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing, 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible..."), https://www.researchgate.net/publication/283668023 (last accessed Nov. 20, 2024).

[17] Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192 (last accessed Nov. 20, 2024).

[18] OECD (2013), *"Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value"*, OECD Digital Economy Papers, No. 220 at 4, OECD Publishing, Paris, https://doi.org/10.1787/5k486qtxldmq-en. (last accessed Nov. 20, 2024).

[19] Interactive Advertising Bureau, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, (Dec. 5, 2018) https://www.iab.com/news/2018-state-of-data-report/ (last accessed Nov. 20, 2024).

93. PII can sell for as much as $363 per record according to the Infosec Institute,[20] and numerous sources cite dark web pricing for personal information, such as name, date of birth, and Social Security number, ranging from $40 to $200.[21]

94. Thefts of Social Security numbers present an even greater risk to consumers. Indeed, data breaches involving Social Security numbers are "incredibly alarming" because "[u]nlike a credit card number which can be changed, Social Security numbers . . . are hard to change, or cannot be changed."[22]

95. PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers. Former United States Attorney General William P. Barr made clear that consumers' sensitive personal information commonly stolen in data breaches "has economic value." The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on anonymous websites, making the information widely available to the criminal underworld.

96. There is an active and robust market for this information. As John Sancenito, president of Information Network Associates, a company which helps companies with recovery after data breaches, explained after a data breach "[m]ost of the time what [data breach hackers]

---

[20] Ashiq JA, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last accessed Nov. 20, 2024).

[21] *Id*.

[22] Brian Naylor, *Victims Of Social Security Number Theft Find It's Hard To Bounce Back*, NPR (Feb. 9, 2015), available at https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed November 19, 2024).

do is they steal the data and then they sell the data on the dark web to the people who actually commit the fraud."

97. As a result of its real value and the recent large-scale data breaches, identity thieves and cybercriminals have openly posted credit card numbers, driver's license numbers, other ID numbers, Social Security numbers, PII, and other sensitive information directly on various websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

98. Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[23]

99. Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[24] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 75% of identity theft victims reported emotional distress.[25]

100. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, commit credit card fraud, incur charges and credit in a victim's name,[26] obtain a driver's license or official identification card in

---

[23] Janice Y. Tsai, et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2), INFORMATION SYSTEMS RESEARCH, 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1 (last accessed Nov. 20, 2024).

[24] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE BLOG (Apr. 14, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last accessed Nov. 20, 2024).

[25] *Id.*

[26] Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last

the victim's name but with the thief's picture, obtain government benefits, or file a fraudulent tax return using the victim's information, obtain a job using the victim's information, rent a house, receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[27]

101. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft face "substantial costs and time to repair the damage to their good name and credit record."[28]

102. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique known as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

103. The PII exposed in the Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein. These risks are both certainly impending and substantial.

104. There may also be a time lag between when sensitive personal information is stolen,

---

accessed Nov. 20, 2024).

[27] *Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Sept. 5, 2024).

[28] U.S. GOV'T ACCOUNTABILITY OFF., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https:// https://www.gao.gov/assets/gao-07-737.pdf (last accessed Nov. 20, 2024).

when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected for weeks or months.

105. According to the GAO, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[29]

106. Beyond economic impacts, identity theft also leads to lasting emotional impacts; a majority of the victims of identity theft report increased stress levels, fatigue, and trust issues with family and friends and decreased energy.[30]

107. It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

**H. Plaintiff and Class Members Suffered Harm as a Result of the Data Breach.**

108. Victims of the Data Breach, like Plaintiff and Class Members, must now spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their privacy and credit because of the Data Breach.[31] The Department of

---

[29] *Id.*

[30] *New Study by Identity Theft Resource Center Explores the Non-Economic Negative Impacts Caused by Identity Theft*, Identity Theft Resource Center (Oct. 18, 2018), available at https://www.idtheftcenter.org/post/new-study-by-identity-theft-resource-center-explores-the-non-economic-negative-impacts-caused-by-identity-theft/#:~:text=Due%20to%20their%20identity%20theft,at%20school%20(eight%20percent) (last accessed November 19, 2024).

[31] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), http://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf (last

Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."

109. As a result of Forth's conduct and failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' PII, which allowed the Data Breach to occur, Plaintiff's and Class Members' PII has been and is now in the hands of unauthorized individuals and third parties, which may include thieves, unknown criminals, and other potentially hostile individuals.

110. Plaintiff and Class Members greatly value their privacy, especially their PII. They would not have entrusted Forth with their PII had they known that it would fail to adequately protect it. Indeed, Plaintiff and Class Members provided Forth with this highly sensitive information with the expectation that Forth would keep their PII secure and inaccessible from unauthorized parties.

111. As a result of Forth's failure to implement and follow even the most basic security procedures, Plaintiff and Class Members have suffered or will suffer actual harms for which they are entitled to compensation, including, but not limited to the following:

a. Trespass, damage to, and theft of their personal property, including PII;

b. Improper disclosure of their PII;

c. The imminent and certainly impending injury flowing from actual and potential future fraud and identity theft posed by their PII being in the hands of criminals and having already been misused;

d. The imminent and certainly impending risk of having their confidential PII used against them by spam callers to defraud them;

---

accessed Nov. 20, 2024).

e. Damages flowing from Defendant's untimely and inadequate notification of the Data Breach;

f. Loss of privacy suffered as a result of the Data Breach;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h. Ascertainable losses in the form of deprivation of the value of Plaintiff's and Class Members' PII for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their PII; and

k. Increased cost of borrowing, insurance, deposits, and other items which are adversely affected by a reduced credit score.

112. Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives.

113. Plaintiff and Class Members are also at a continued risk of harm because their PII remains in Forth's systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as Forth fails to undertake the necessary and appropriate data security measures to protect the PII in its possession.

114. Plaintiff and Class Members further face substantial risk of being targeted for phishing, data intrusion, and other illegal schemes based on Plaintiff's and Class Members' PII, as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

115. Plaintiff and Class Members further have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a. Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions and/or government agencies to dispute unauthorized and fraudulent activity in their names;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring insurance accounts, bank accounts, and credit reports for unauthorized activity for years to come.

116. As a result of the Data Breach, and in addition to the time Plaintiff and Class Members have spent and anticipate spending to mitigate the impact of the Data Breach on their lives, Plaintiff and Class Members have also suffered emotional distress from the public release of their PII, which they believed would be protected from unauthorized access and disclosure. The emotional distress they have experienced includes anxiety and stress resulting from the fear that unauthorized bad actors are viewing, selling, and or using their PII for the purposes of identity theft and fraud.

117. Additionally, Plaintiff and Class Members have suffered damage to and diminution in the value of their highly sensitive and confidential PII —a form of property that Plaintiff and Class Members entrusted to Forth, and which was compromised as a result of the Data

Breach Forth failed to prevent. Plaintiff and Class Members have also suffered a violation of their privacy rights as a result of Forth's unauthorized disclosure of their PII.

118. Plaintiff and Class Members were also damaged because they overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of their computer system(s) and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and Class Members did not get what they paid for and agreed to.

119. To date, Defendant has done virtually nothing to provide Plaintiff and Class Members with relief for the damages they have suffered as a result of the Data Breach.

120. Although Defendant offered victims credit monitoring, Plaintiff's and Class members' PII, including their Social Security numbers, cannot be changed and will remain at risk long into the future. As a result, Plaintiff and the Class will remain at a heightened and unreasonable risk of identity theft for the remainder of their lives.

121. Moreover, Defendant failed to compensate Plaintiff and Class Members for damages incurred and time spent dealing with the Data Breach.

122. Many failures laid the groundwork for the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cybersecurity training, procedures, and protocols that were necessary to protect Plaintiff's and Class Members' PII.

123. Defendant maintained the PII in an objectively reckless manner, making the PII vulnerable to unauthorized disclosure.

124. Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would result if Plaintiff's and Class

Members' PII were stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of the breach.

125. The risk of improper disclosure of Plaintiff's and Class Members' PII was known to Defendant, and Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class Members' PII from that risk left the PII in a dangerous condition.

126. Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their PII was protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members with prompt and accurate notice of the Data Breach.

## VI. CLASS ALLEGATIONS

127. Plaintiff brings this case individually and, pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, on behalf of a Nationwide Class defined as:

> **All persons in the United States whose PII was compromised as a result of the Data Breach (the Nationwide Class").**

128. Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition after conducting discovery.

129. In addition, Plaintiff brings this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a California Subclass defined as:

> **All persons who are residents of the State of California whose PII was compromised as a result of the Data Breach (the "California Subclass").**

130. Excluded from the California Subclass are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition after conducting discovery.

131. The Nationwide Class and the California Subclass are collectively referred to herein as the "Class."

132. The requirements of Rule 23(a)(1) are satisfied. The Class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. As noted above, there are approximately 1.5 million Class Members.

133. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to, the information implicated in the Data Breach.

134. The requirements of Rule 23(a)(2) are satisfied. There is a well-defined community of interest and there are common questions of fact and law affecting Class Members. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

a. Whether and to what extent Defendant had a duty to secure and protect the PII of Plaintiff and Class Members;

b. Whether Defendant was negligent in collecting and disclosing Plaintiff's and Class Members' PII;

c. Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

d. Whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

e. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

f. Whether Defendant breached its duties to exercise reasonable care in handling Plaintiff's and Class Members' PII in the manner alleged herein, including failing to comply with industry standards;

g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendant had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes;

i. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

j. Whether Plaintiff and Class Members are entitled to declaratory judgment under 28 U.S.C. § 2201, *et seq.*;

k. Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conducts; and

l. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

135. The requirements of Rule 23(a)(3) are satisfied. Plaintiff's claims are typical of the

claims of Class Members. The claims of the Plaintiff and Class Members are based on the same legal theories and arise from the same failure by Defendant to safeguard PII. Plaintiff and Class Members each had their PII disclosed by Defendant to an unauthorized third party.

136. The requirements of Rule 23(a)(4) are satisfied. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of Class Members and has no interests antagonistic to the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, including data breach litigation. The claims of Plaintiff and Class Members are substantially identical as explained above. While the aggregate damages that may be awarded to the Class Members are likely to be substantial, the damages suffered by the individual Class Members are relatively small. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Certifying the case as a class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendant's uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class Member.

137. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and

to the Court. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting damages in the aggregate would go unremedied.

138. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant owed a legal duty to Plaintiff and the Classes to exercise due care in collecting, storing, using, and safeguarding their PII;

b. Whether Defendant's data security practices were reasonable in light of best practices recommended by data security experts;

c. Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d. Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

e. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

139. Finally, all members of the proposed Classes are readily ascertainable. Defendant has access to the names and addresses of Class Members affected by the Data Breach. At least some Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VII. CAUSES OF ACTION

**COUNT I - NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

140. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

141. Forth owed a duty to Plaintiff and all other Class Members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

142. Forth knew, or should have known, the risks of collecting and storing Plaintiff's and all other Class Members' PII and the importance of maintaining secure systems. Forth knew, or should have known, of the vast uptick in data breaches in recent years. Forth had a duty to protect the PII of Plaintiff and Class Members.

143. Given the nature of Forth's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Forth should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

144. Forth breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the PII entrusted to them, including Plaintiff's and Class Members' PII.

145. It was reasonably foreseeable to Forth that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members'

PII to unauthorized individuals.

146. But for Forth's negligent conduct/breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

147. As a result of Forth's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation and diminution in the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vii) actual or attempted fraud.

**COUNT II - NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Nationwide Class)**

148. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

149. In addition to the common law, Forth's duties arise from Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Forth, of failing to employ reasonable measures to protect and secure PII.

150. Forth violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and all other Class Members' PII and not complying with applicable industry standards. Forth's conduct was particularly unreasonable given the nature and amount

of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and the other Class Members.

151. Forth's violations of Section 5 of the FTC Act constitute negligence per se.

152. Plaintiff and Class Members are within the class of persons that Section 5 of the FTC Act was intended to protect.

153. The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTC Act was intended to guard against.

154. It was reasonably foreseeable to Forth that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

155. The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of Forth's violations of Section 5 of the FTC Act. Plaintiff and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation and diminution in the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred

to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vi) actual or attempted fraud.

**COUNT III - BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and the Nationwide Class)**

156. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

157. Plaintiff and Class Members either directly or indirectly gave Forth their PII in confidence, believing that Forth would protect that information. Plaintiff and Class Members would not have provided Forth with this information had they known it would not be adequately protected. Forth's acceptance and storage of Plaintiff's and Class Members' PII created a fiduciary relationship between Defendant and Plaintiff and Class Members. In light of this relationship, Forth must act primarily for the benefit of its customers (at least insofar as it relates to the safeguarding of their PII).

158. Forth has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class Members' PII, failing to comply with the data security guidelines set forth by Section 5 of the FTC Act, and otherwise failing to safeguard the PII of Plaintiff and Class Members it collected.

159. As a direct and proximate result of Forth's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII

which remains in Forth's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) actual or attempted fraud.

**COUNT IV – BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

160. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

161. Defendant required Plaintiff and Class Members to provide, or authorize the transfer of, their PII in order for Forth to provide services. In exchange, Forth entered into implied contracts with Plaintiff and Class Members in which Forth agreed to comply with their statutory and common law duties to protect Plaintiff's and Class Members' PII and to timely notify them in the event of a data breach.

162. Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only; (b) take reasonable steps to safeguard that PII; (c) prevent unauthorized disclosures of the PII; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII; (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses; and (f) retain the PII only under conditions that kept such information secure and confidential.

163. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

164. Plaintiff and Class Members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII, as promised, or provide timely notice of a data breach.

165. Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

166. Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

167. The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Defendant's breach of their implied contracts with Plaintiff and Class Members.

**COUNT V - UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

168. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

169. This claim is pleaded in the alternative to the implied contract claim in Count IV.

170. Plaintiff and Class members conferred benefits upon Defendant. In exchange for providing payment and PII, Plaintiff and Class members should have received debt account administrator and processor services accompanied by Defendant's adequate safeguarding of their PII.

171. Forth accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members and benefited from the receipt of Plaintiff's and Class Members' PII.

172. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead utilized cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand,

suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over adequate security.

173. Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

174. Forth should not be permitted to retain the money belonging to Plaintiff and Class Members because Forth failed to adequately implement the data privacy and security procedures for themselves that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, local laws, and industry standards. Class members now must monitor their personal, immutable PII for the rest of their lives.

175. Forth should be compelled to provide for the benefit of Plaintiff and Class Members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

**COUNT VI - VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT ("CCPA"), Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the California Subclass)**

176. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

177. Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of Plaintiff and the California Subclass. As a direct and proximate result, Plaintiff's unencrypted and unredacted PII was subject to unauthorized access and exfiltration and theft.

178. Defendant is a "business" under the meaning of California Civil Code § 1798.140 because Defendant is a "corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners" that "collects consumers' personal information" and is active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civil Code § 1798.140(d).

179. Plaintiff seeks injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold PII, including Plaintiff's PII. Plaintiff has an ongoing interest in ensuring that his PII is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

180. Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

181. As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

**COUNT VII - VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA), California Civil Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

182. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

183. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

184. Defendant's unlawful conduct described herein was intended to increase sales to the consuming public and violated and continue to violate Section 1770(a)(5), (a)(7), and (a)(9) of the CLRA by representing that the products and services have characteristics and benefits which they do not have.

185. Defendant fraudulently deceived Plaintiff and the California Subclass by representing that their products and services have certain characteristics, benefits, and qualities which they do not have, namely data protection and security. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the California Subclass, specifically by advertising secure technology when Defendant in fact failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the California Subclass and depriving them of their legal rights and money.

186. Defendant's claims about the products and services led and continues to lead consumers like Plaintiff to reasonably believe that Defendant has implemented adequate data security measures when Defendant in fact neglected system vulnerabilities that led to a data breach and enabled hackers to access customers' PII.

187. Defendant knew or should have known that adequate security measures were not in place and that consumers' PII was vulnerable to a data breach.

188. Plaintiff and the California Subclass have suffered injury in fact as a result of and in reliance upon Defendant's false representations.

189. Plaintiff and the California Subclass would not have purchased the products or

used the services or would have paid significantly less for the products and services, had they known that their Personal Information was vulnerable to a data breach.

190. Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in their concealment of the same.

191. Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for products and services advertised as secure, and consequentially entrusted Defendant with his PII, when Defendant in fact failed to institute adequate security measures and neglected vulnerabilities that led to a data breach. Plaintiff and the California Subclass would not have purchased the products and services or would not have provided Defendant with their PII, had they known that their Personal Information was vulnerable to a data breach.

192. Defendant should be compelled to implement adequate security practices to protect customers' PII. Additionally, Plaintiff and the members of the California Subclass lost money as a result of Defendant's unlawful practices.

193. At this time, Plaintiff seeks injunctive relief under the CLRA pursuant to Cal. Civ. Code 1782(d); but he anticipates the need to amend the complaint and seek restitution.

**COUNT VIII - VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. and Prof. Code §§ 17200, *et seq*. ("UCL")**
**(On Behalf of Plaintiff and the California Subclass)**

194. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

195. The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

196. By reason of Defendant's above-described wrongful actions, inaction, and omission, the resulting Data Breach, and the unauthorized disclosure of Plaintiff's and Class Members' PII, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

197. Defendant's business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the private and confidential PII of consumers has been compromised for all to see, use, or otherwise exploit.

198. Defendant's practices were unlawful and in violation of the UCL and Defendant's own privacy policy because Forth failed to take reasonable measures to protect Plaintiff's and Class Members' PII.

199. Defendant's business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the PII they provide to Defendant will remain private and secure, when in fact it was not private and secure.

200. Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and disclosure of their PII.

201. Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 et seq., in that Defendant's conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive, and unscrupulous,

and the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

202. But for Defendant's misrepresentations and omissions, Plaintiff and Class Members would not have provided their PII to Defendant or would have insisted that their PII be more securely protected.

203. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Class Members' PII, they have been injured as follows: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendant; (3) the increased, imminent risk of fraud and identity theft; (4) the compromise, publication, and/or theft of their PII; and (5) the costs associated with monitoring their PII, amongst other things.

204. Plaintiff accordingly seeks relief under the UCL including, but not limited to, restitution to Plaintiff and Class members of money or property that the Defendant acquired by means of their unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of their unfair business practices, declaratory relief, attorneys' fees and costs, and injunctive or other equitable relief.

## VIII. PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in their favor and against Forth as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual

damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, individually, and on behalf of the Class, seeks appropriate injunctive relief designed to prevent Forth from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft.

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under

law.

## IX. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: November 20, 2024

Respectfully submitted,

By: */s/ Elizabeth A. Fegan*

Elizabeth A. Fegan
Megan E. Shannon
**FEGAN SCOTT LLC**
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
beth@feganscott.com
megan@feganscott.com

Thomas E. Loeser (pro hac vice forthcoming)
**COTCHETT PITRE & MCCARTHY LLP**
999 N. Northlake Way, Suite 215
Seattle, WA 98103
Telephone: (206) 802-1272
Facsimile: (650) 697-0577
tloeser@cpmlegal.com

James F. Clapp (pro hac vice forthcoming)
**CLAPP & LAUINGER LLP**
701 Palomar Airport Rd. Ste. 300
Carlsbad, CA 92011
Tel: (760) 209-6565 ext. 101
Fax: (760) 209-6565
jclapp@clapplegal.com

Edward J. Wynne (pro hac vice forthcoming)
**WYNNE LAW FIRM**
80 E. Sir Francis Drake Blvd., Ste. 3-G
Larkspur, CA 94939
Tel: (415) 461-6400
Fax: (415) 461-3900
ewynne@wynnelawfirm.com

*Counsel for Plaintiff*